UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARELIOUS REED,                                    Case No. 18-11431

             Plaintiff,                      Stephanie Dawkins Davis
v.                                                United States District Judge

COMMISSIONER OF SOCIAL
SECURITY,

             Defendant.
_____/

**OPINION AND ORDER ON CROSS MOTIONS
FOR SUMMARY JUDGMENT (ECF Nos. 15, 17)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On May 5, 2018, *pro se* plaintiff Arelious Reed filed the instant suit seeking

judicial review of the Commissioner's unfavorable decision disallowing benefits.

(ECF No. 1).  Presently before the court are the parties' cross-motions for

summary judgment.  (ECF Nos. 15, 17).  Reed timely filed a reply to the

Commissioner's motion for summary judgment.  (ECF No. 18).

### B.    Administrative Proceedings

On May 19, 2015, Reed filed a Title II application for a period of disability

and disability insurance benefits, alleging disability beginning February 19, 2015.

(Tr. 10).[1]  The Commissioner initially denied his claim on October 22, 2015.  (*Id.*)

He requested a hearing and appeared in person on December 7, 2016 before

Administrative Law Judge Elias Xenos ("the ALJ") in Detroit, Michigan.  (*Id.*)  In

a decision dated March 10, 2017, the ALJ found that Reed was not disabled.  (Tr.

10-21).  Reed requested a review of this decision, and, on April 9, 2018, the ALJ's

decision became the final decision of the Commissioner when the Appeals Council

denied his request for review.  (Tr. 1-3); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d

541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the court **GRANTS** plaintiff's motion for

summary judgment, **DENIES** defendant's motion for summary judgment,

**REVERSES** the findings of the Commissioner, and **REMANDS** for further

proceedings under Sentence Four.

## II.   FACTUAL BACKGROUND

Reed, who was born in 1979, was 35 years old on February 19, 2015, the

alleged onset date of disability.  (Tr. 12).  At his administrative hearing, Reed

testified that for the preceding five years he lived alone in a duplex.[2]  (Tr. 48).

---

[1] The Administrative Record appears on the docket at entry number 12.  All references to this record are identified as "Tr."

[2] The court notes that Reed indicated several times in his function report that he was homeless.  (*See e.g.*, Tr. 169).  Reed completed the function report on June 15, 2013—three years prior to the hearing.  (Tr. 176).  Thus, Reed's function report does not jibe with his testimony.  The ALJ found that Reed lived alone in a residence.  (Tr. 19).  Substantial evidence supports this finding.  The only other mention of homelessness in the record is the state agency's

Prior to claiming disability, Reed worked at Labor Ready as a sales route driver. On February 4, 2015, Reed was involved in an on-the-job car accident in which the truck he was driving was struck by another vehicle as he sat stationary at a traffic light.  (Tr. 292, 304).  Shortly after the wreck, he began experiencing symptoms related to his neck and lower back.  His claim for disability benefits is based on "circumferential disc bulging at L4-L5 with bilateral moderate foraminal stenosis" and "low back pain[,] cervical disc herniation[, and] lumbar disc herniation."  (Tr. 169).

In evaluating Reed's claim, the ALJ applied the five-step disability analysis and found at step one that he did not engage in any substantial gainful activity since February 19, 2015.  (Tr. 12).  At step two, the ALJ found that Reed has the following severe impairments: cervical and lumbar spine disorders with radiculopathy, obstructive sleep apnea, obesity, mood disorder, generalized anxiety disorder, and attention deficit hyperactivity disorder (ADHD).  (Tr. 12).  At step three, the ALJ found that Reed did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations.  (Tr. 13-15). In making this finding, the ALJ examined Reed's physical impairments and determined that he did not meet or medically equal the criteria of any impairment

---

initial finding (which appears to be based on his function report).  (Tr. 70).  And during a physical therapy session on February 3, 2016, Reed indicated that he lives alone.  (Tr. 506).

listed in 1.00 for musculoskeletal disorders, 3.00 for respiratory disorders, and

11.00 for neurological disorders.  (Tr. 13).  The ALJ also analyzed Reed's mental

health impairments under Listings 12.04, 12.06, and 12.08 and found that Reed

satisfied neither the paragraph B nor paragraph C criteria.  (Tr. 13-14).  Next, the

ALJ determined that Reed has the residual functional capacity ("RFC") to perform

light work except that he can frequently handle and finger bilaterally; occasionally

climb ramps and stairs; occasionally balance, stoop, crouch, crawl, and kneel; he

cannot climb ladders, ropes, or scaffolds; he requires the ability to sit and stand at

will, provided that he is not off task for more than 10% of the work period; and his

work must be limited to simple, routine, and repetitive tasks.  (Tr. 15-19).  At step

four, the ALJ determined that Reed cannot perform his past relevant work as a

sales route driver (semi-skilled/medium) and a bus driver (semi-skilled/medium).

(Tr. 19).  At step five, the ALJ concluded that there were a significant number of

jobs in the national economy that Reed could perform and, thus, he was not under a

disability from the alleged onset date through the date of the decision.  (Tr. 20-21).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If a claimant does not obtain relief during the administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may … consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

6

The court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability

7

Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty-stricken adults and children who become disabled. F. Bloch, Federal

Disability Law and Practice § 1.1 (1984). While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920. Essentially, the ALJ must determine whether: (1) the

plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe

impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a

Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to

perform past relevant work, whether there is work in the national economy that the plaintiff can perform.  *Id*.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g); 20 C.F.R. § 416.960(c).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.  *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Timeliness of the Commissioner's Answer

Reed argues that the Commissioner failed to timely file an answer. (ECF No. 15, PageID.1285 (citing *Lipp v. Port Auth.*, 34 A.D.3d 649 (N.Y. Sup. Ct. 2006)). In response, the Commissioner argues that the answer was filed within the time provided by the Federal Rules of Civil Procedure. (ECF No. 17, PageID.1302-1303).

Federal Rule of Civil Procedure 4(i) prescribes process-serving requirements for actions against a federal agency, like the Social Security Administration. Rule 4(i) requires a plaintiff to serve a federal agency by: (1) personal or mail service of the summons and complaint on the United States Attorney in the district in which the action is filed (here, the Eastern District of Michigan); (2) mailing a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States in Washington, D.C.; and (3) mailing a copy of the summons and complaint by registered or certified mail to the federal agency (here, the Social Security Administration). Fed. R. Civ. P. 4(i)(1)-(2). Under Rule 12(a)(2), the United States must serve an answer to a complaint within 60 days after service on the United States Attorney. Fed. R. Civ. Pro. 12(a)(2).

The Commissioner timely filed an answer in this matter. This court issued an order to show cause as to why the plaintiff had not served the complaint. (ECF No. 7). Reed filed a timely response and provided the court with proof that he had

10

served the Attorney General of the United States and the Social Security

Administration; the response contained no evidence, however, that the plaintiff had

served the U.S. Attorney's Office in this district.  (ECF No. 8).   In consideration

of the evidence that Reed provided, the court vacated its order to show cause and

allowed him additional time to serve the complaint on the U.S. Attorney's Office.

The order permitted Reed to complete service by February 4, 2019.  (ECF No. 9).

Reed mailed the service package via the United States Postal Service to the United

States Attorney on January 6, 2019, and the USPS delivered it three days later on

January 9, 2019.  (*See* ECF No. 51-1, PageID.1290).  Reed appears to argue that

Rule 12(a)(2)'s 60-day clock begins to run on the date that the plaintiff mails the

summons and complaint.  (*See* ECF No. 15-1, PageID.1290).  But such a

construction of the rule is mistaken, as the time does not begin to run until the

plaintiff *serves* the documents.  *Fox v. U.S. Postal Serv.*, 2019 WL 8619622, at *3

(6th Cir. Oct. 30, 2019).  The Commissioner has demonstrated that Reed *served* the

United States Attorney for the Eastern District of Michigan on January 9, 2019—

the date that the office received the summons and complaint.  (*See* ECF No. 15-1,

PageID.1290).  When, as here, the time period is stated in days, a party "excludes

the day of the event that triggers the period" in computing the time to respond.

Fed. R. Civ. P. 6(a)(1)(A).  Sixty days from January 9, 2019 was March 10, 2019,

which was a Sunday.  Under Rule 6(a)(1)(C), when the last day is a Sunday, the

period continues to run until the next day that is neither a weekend day nor legal holiday. Thus, the period ended in this case on Monday, March 11, 2019. The Commissioner filed an answer on March 8, 2019. (ECF No. 11). For these reasons, the Commissioner timely filed an Answer.

D.   Step 3

Reed does not articulate any additional grounds for reversal in his opening brief. But, for the first time in his reply, he asserts that the ALJ erred in finding that he does not meet or equal a listing and that he provided sufficient evidence of his disability. (ECF No. 18, PageID.1326). As a general rule, issues raised for the first time in a reply brief may be deemed waived. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (quoting *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)). This is because the opposing side typically does not have an opportunity to respond when an issue is not raised in the opening brief. However, here the Commissioner anticipated this issue in his motion for summary judgment. (ECF No. 17, PageID.1304-1310). Moreover, in the view of the undersigned, there is a significant error in the ALJ's sequential analysis at step three on the issue of medical equivalence, requiring remand. And, even if not raised by the parties, the Court may raise such an obvious and significant legal error *sua sponte*. *See e.g*., *Trainor v. Comm'r of Soc. Sec.*, 2014 WL 988993, at *23-24 (E.D. Mich. Mar. 13, 2014) (Berg, J.) (citing *Fowler*

*v. Comm'r v. Comm'r of Soc. Sec.*, 2013 WL 537883, at *3 n. 5 (E.D. Mich. Sept.

25, 2013) (finding no error in magistrate judge *sua sponte* raising the absence of an

expert opinion on equivalence).[3]

The Commissioner acknowledges that a single decision-maker reviewed the

medical evidence in this case.  (ECF No. 17, PageID.1308) (citing Tr. 76).  Under

the "single decision-maker" model, non-medical agency employees are permitted

to render an initial denial without expert opinions on the issue of medical

equivalence or disability.  20 C.F.R. §§ 404.906(b)(2), 416.1406(b)(2).  However,

courts in this district overwhelmingly agree that this procedural change at the

initial level did not alter the agency's "longstanding policy" that a medical opinion

on the issue of equivalency was necessary at the administrative hearing stage at the

time Reed's hearing occurred.[4]

---

[3] As explained in *Fowler v. Comm'r of Soc. Sec.*, 2013 WL 5372883, at *3 (E.D. Mich. Sept. 25, 2013), the Sixth Circuit has also previously considered the issue of whether certain impairments meet or equal a listing, even though that issue had not been specifically objected to, and this practice is not uncommon in this District and throughout the Circuit.  *See Gwin v. Comm'r of Soc. Sec.*, 109 Fed. Appx. 102 (6th Cir. 2004); *see also Buhl v. Comm'r of Soc. Sec.*, 2013 WL 878772, at *7 n. 5 (E.D. Mich. 2013) (plaintiff's failure to raise argument did not prevent the Court from identifying error based on its own review of the record and ruling accordingly), *adopted by* 2013 WL 878918 (E.D. Mich. Mar. 8, 2013) (Friedman, J.); *Bucha v. Comm'r of Soc. Sec.*, 2016 WL 5340271*3 n. 3 (W.D. Mich. 2016) ("While the failure to raise an argument often constitutes waiver, the Court will not overlook the ALJ's application of the wrong standard in this case as a matter of law."); *Mian v. Colvin*, 2015 WL 2248750, *14 (E.D. Tenn. 2015) ("[T]he Court may address an issue sua sponte should it find error upon review.").

[4] SSR 17-2p, which became effective on March 27, 2017 and has been interpreted to have effectively ended the agency's policy of requiring a medical opinion on equivalence, does not apply here as the ALJ issued his decision on March 10, 2017.  Instead, SSR 96-6p, which required such an opinion, applies.

In short, the Commissioner is required to have a medical opinion to support the equivalency analysis. *See e.g.*, *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)); *Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. Oct. 21, 2011) (warning that an ALJ who makes a step-three equivalence determination without expert opinion evidence runs the risk of impermissibly playing doctor); *Stratton v. Astrue*, 987 F.Supp.2d 135, 148 (D. N.H. 2012) (SSR 96-6p treats equivalence determinations differently from determinations as to whether an impairment meets a listing, requiring expert evidence for the former, but not the latter.) (citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. 2008) ("The basic principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings.") (citation and quotation marks omitted)). Indeed, the applicable regulation requires that an opinion by a medical consultant be considered in making such an assessment:

> When we determine if your impairment medically equals
> a listing, we consider all evidence in your case record
> about your impairment(s) and its effects on you that is
> relevant to this finding.  We do not consider your
> vocational factors of age, education, and work experience
> (see, for example, § 404.1560(c)(1)).  *We also consider
> the opinion given by one or more medical or
> psychological consultants designated by the
> Commissioner.*  (See § 404.1616.)

20 C.F.R. § 404.1526(c) (emphasis added).  As noted, the ALJ did not obtain any

opinion from a medical advisor on equivalency in this case regarding Reed's

severe physical impairments.  This was an error.  *See Fowler*, 2013 WL 5372883,

at *4 (collecting cases and remanding because there was no expert medical opinion

on the issue of equivalence)); *Manson v. Comm'r of Soc. Sec.*, 2013 WL 3456960,

at *11 (E.D. Mich. July 9, 2013) (Cohn, J.) (remanding for an expert opinion at

step three).  Although the Sixth Circuit has not directly addressed the issue, it has

reasoned that, "[g]enerally, the opinion of a medical expert is required before a

determination of medical equivalence is made."  *Retka v. Comm'r of Soc. Sec.*, 70

F.3d 1272 (6th Cir. 1995); *see also*, *Brown v. Comm'r of Soc. Sec.*, 2014 WL

222760, at *13 (E.D. Mich. Jan. 21, 2014) (Drain, J.) (The lack of an expert

opinion on whether the claimant's physical impairments (alone or combined with

her mental impairments) medically equal any listed impairment is clear error and

requires remand where the record is not so lacking in medical findings that a

finding of equivalence is implausible.); *Maynard v. Comm'r*, 2012 WL 5471150

(E.D. Mich. 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence.") (Cohn, J.); *Harris v. Comm'r*, 2013 WL 1192301, *8 (E.D. Mich. 2013) (a medical opinion on the issue of equivalence is required, regardless of whether the single decision-maker model is implicated) (Ludington, J.).

Here, as noted, a single decision-maker determined whether Reed's physical impairments rendered him disabled at the administrative stage. (Tr. 76). The ALJ did not rely on that opinion at step three, but instead analyzed Reed's ability to meet Listings 1.04, 3.02, and 11.14 himself. (Tr. 13). The ALJ found that Reed did not present sufficient evidence to satisfy all of the elements of the relevant Listings. (*Id.*) Without question, such determinations were well within the ALJ's purview and the court and the court finds no error in that evaluation. (*Id.*) However, the ALJ then went on to conclude that plaintiff's physical impairments did not medically equal any Listing, without the benefit of any medical opinion and without any indication that plaintiff's physical impairments, aside from obesity, were assessed in combination. The ALJ's analysis in this regard is as follows:

> The severity of the claimant's physical impairments, considered singly and in combination, does not meet or medically equal the criteria of any impairment listed in 1.00 for musculoskeletal disorders, 3.00 for respiratory disorders, 11.00 for neurological disorders, or any impairment

listed in Appendix l, Subpart P. Regulations No. 4. Specifically, the claimant does not meet or medically equal listing 1.04 because he lacks the requisite motor and sensory deficits, and there is no evidence of spinal arachnoiditis or spinal stenosis resulting in pseudoclaudication.  In addition, the undersigned evaluated the claimant's sleep apnea under listing 3.02 but found that it did not rise to listing level. Moreover, the claimant does not meet listing 11.14 for peripheral neuropathies, as there is no evidence of disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities. In addition, the record does not support a marked limitation in physical functioning.

There is no listing which specifically addresses obesity. Section l.00(Q) of Appendix 1, however, states that obesity is a medically determinable impairment that is often associated with disturbance in the musculoskeletal, respiratory, and cardiovascular body systems, and disturbance of these systems can be a major cause of disability in individuals with obesity.  Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential process, including when assessing an individual's residual functional capacity, consideration must be given to any additional and cumulative effects of obesity. After carefully reviewing the medical record, however, the undersigned concludes that the claimant's obesity, singularly or in combination with his other impairments, is not of the severity to meet or equal the criteria of any impairment listed in Appendix 1.

(*Id.*)

Notably, though the ALJ's opinion concludes that Reed neither meets nor equals any listing, the analysis, with the exception of the obesity discussion, is framed only in terms of the deficiencies for meeting the criteria for each listing. It contains no discussion of whether other findings in the record suggest equivalency. And while some positive findings are discussed elsewhere in the opinion, none are filtered through the lens of a trained medical professional. Indeed, the record contains no evidence that a qualified medical advisor assessed the medical equivalence of Reed's physical impairments at any stage of review. Although the Disability Determination and Transmittal form was signed by a psychologist, Kathy Morrow, Ph.D. (Tr. 65), Dr. Morrow is not qualified to assess Reed's physical impairments or their effect in combination with his mental impairments because Dr. Morrow is not a medical doctor.[5] Thus, the Disability Determination

---

[5] The expert opinion requirement for equivalency can be satisfied by a medical advisor's signature on the Disability Determination Transmittal Form. *Stratton*, 987 F.Supp.2d at 148 (citing SSR 96-6p, 1996 WL 374180, at *3 (The expert-opinion evidence required by SSR 96-6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831-U5 (Disability Determination and Transmittal Form).")). In the instant record, there is Disability Determination and Transmittal Form and Disability Determination Explanation signed by Kathy Morrow, Ph.D. as to Reed's mental impairments, but only a single decision-maker signed these documents as to his physical impairments and functioning. (Tr. 99-105). Dr. Morrow is not qualified to assess Reed's mental functioning in combination with his physical impairments because she is not a medical doctor. *See Greene-Howard v. Comm'r of Soc. Sec*., 2017 WL 2118256, at *11 (E.D. Mich. May 15, 2017) (citing *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (finding that a psychologist was not qualified to diagnose a claimant's physical conditions); *Byerley v. Colvin*, 2013 WL 2145596, at *11 (N.D. Ind. May 14, 2013) ("Because the psychologist who prepared the form did not consider physical impairments, it cannot be relied on as expert opinion that Plaintiff's combination of physical and mental impairments do not equal a Listing.")).

Explanation form only contains an assessment of plaintiff's physical impairments by a single decision-maker, not any medical advisor.  (Tr. 66-79).  As such, the ALJ was left with no medical opinion in this record on the issue of equivalence as to Reed's physical impairments, as required by SSR 96-6p.

Compounding the ALJ's failure to obtain a medical advisor opinion on equivalence as to plaintiff's severe physical impairments, is the fact that the ALJ's resulting approach only partially addresses a critical component of the equivalence analysis, namely the requirement to assess severe impairments in combination.  If a claimant has more than one severe impairment (as plaintiff does here), none of which meet a listing singularly, the Commissioner must determine whether "the combination of impairments is medically equal to the listed impairment."  20 C.F.R. § 404.1526(b)(3).  Though the ALJ indicated that he considered the impact of plaintiff's obesity on each of his impairments, it is not apparent that he considered all of his severe impairments in combination.  *See also Wilcox v. Comm'r of Soc. Sec.*, 2014 WL 4109921, *4 (E.D. Mich. 2014) (Duggan, J.) (The ALJ failed to consider the severity of plaintiff's impairments in combination, as prescribed by 20 C.F.R. § 416.920(c)); *see also* 42 U.S.C. § 423(d)(2)(B) ("In determining whether an ... impairment or impairments are of a sufficient medical severity such that [a finding of disability would be warranted], the Commissioner ... shall consider the combined effect of all of the individual's impairments without

regard to whether any such impairment, if considered separately, would be of such severity.").  Likewise, there is no opinion from a medical advisor addressing whether the plaintiff's impairments in combination equaled a listing.

The Commissioner argues and the court recognizes that the failure to obtain a medical opinion on equivalence can amount to harmless error in some instances. However, the instant circumstances do not appear to qualify.  *See e.g.*, *Bukowski v. Comm'r of Soc. Sec.*, 2014 WL 4823861, at *6 (E.D. Mich. Sept. 26, 2014).  As explained in *Bukowski*, "'the harmless error inquiry turns on whether the ALJ would have reached the same conclusions,' at Step Three had there been a medical opinion on the combination of Bukowski's psychiatric and physical impairments." *Bukowski*, 2014 WL 4823861, at *5.  In *Bukowski*, the failure to obtain an opinion on equivalence was deemed harmless "given Plaintiff's failure to adduce evidence that the physical impairments had any effect on her psychiatric impairments and her admission that her psychiatric impairments were the basis for her disability." *Id.* at *6.

Here, unlike the facts in *Bukowski*, Reed has not made any such claim. Reed's medical records contain a not insubstantial number of objective medical findings concerning his physical impairments.  Those findings include, amongst other things: (1) slow/guarded movements in all directions, with pain across the lumbar spine diffusely along with a diagnosis of cervical and lumbar strain (Tr.

20

294, 310); (2) an MRI of the cervical and lumbar spine on May 1, 2015 showing C7-T1 moderate right lateral disc protrusion touching and flattening the right ventral cord and L5-S1 broad-based right sub-articular/foraminal disc protrusion abutting the right S1 nerve root; Reed was diagnosed with both cervical and lumbar disc herniations and prescribed lumbar epidural steroid injections with fluoroscopy L5-S1 (Tr. 219); (3) on April 1, 2015 he showed decreased cadence (Tr. 300) and his progress was noted to be slower than expected (Tr. 301); (4) an examination on May 15, 2015 revealed decreased sensation in the left lumbar area (Tr. 218); (5) an MRI of his cervical spine in March 2016 showed that his condition had slightly worsened (Tr. 427); (6) because of the pain radiating from his lower back into his legs, Reed was prescribed high-level narcotic medications, including Oxycodone HCL – Acetaminophen, Hydrocodone Bitartrate Acetaminophen, Percocet™ and Morphine along with Diazepam apparently for anxiety from 2015 into as late as November 2016 (Tr. 451-456, 806); and (7) orthopedic examination conducted in August 2016 showed decreased strength in his left upper extremity, 4/5 strength in his left leg and slight pain in his lower back with bilateral leg lift.  (Tr. 392).

Notwithstanding the ALJ's analysis on meeting the listing, considering the evidence listed above, some of which the ALJ discussed, it cannot be said that the record is so lacking in medical findings that a finding of equivalence is

implausible.  Indeed, although certainly possible, it is not evident that a trained

medical advisor, viewing the record as a whole and along a continuum, while also

considering all of plaintiff's impairments in combination would have reached the

same conclusion.  The caution in *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647

(6th Cir. 2009) is apt here.  There the Sixth Circuit observed that "courts generally

should exercise caution in conducting harmless error review" of a step three

finding because harmlessness "may be difficult, or even impossible, to assess."  *Id.*

at 655-58.  Its pertinence here is that neither the ALJ nor this court possesses the

requisite medical expertise to interpret the significant medical evidence in the

record to determine if plaintiff's impairments, in combination, equal any of the

applicable listings.  *See also Allor v. Colvin*, 2016 WL 7650798, at *6 (E.D. Mich.

Nov. 28, 2016) (Stafford, M.J.), report and recommendation adopted 2017 WL

2350061 (E.D. Mich. May 31, 2017) (Cox, J.).  The objective medical findings in

this case simply do not lend themselves to neat lay interpretation by the court; and,

in view of the more than minimal number of medical findings, the court does not

deem it a prudent exercise to analyze equivalence in the first instance.  *See*

*Freeman v. Astrue*, 2012 WL 384838 at *5 (E.D. Wash. Feb 6, 2012) ("Neither the

ALJ nor this court possesses the requisite medical expertise to determine if

Plaintiff's impairments (including pain) in combination equal one of the

Commissioner's Listing."); *Brown v. Comm'r of Soc. Sec.*, 2014 WL 222760, at

*15 (E.D. Mich. Jan. 21, 2014) (Drain, J.) (Plaintiff's appreciable medical findings supporting her impairments, while insufficient to meet a listing, presented sufficient evidence to suggest that a finding of medical equivalence was at least plausible, thereby necessitating a medical opinion on the issue).

In fashioning the RFC without the assistance of a medical opinion on equivalence of plaintiff's physical impairments and their combination, the ALJ carved out several limiting functions based on his own interpretation of the medical records.  For these reasons, the court concludes that this matter must be remanded so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence as to plaintiff's impairments in combination and for reevaluation of the treating physician opinion, plaintiff's credibility, and the RFC in light of the new opinion.  Updated vocational expert testimony may also be necessary, based on the conclusions of the medical advisor.

     E.    <u>Non-Acceptable Medical Sources</u>

Reed argues, for the first time in reply, that the ALJ's decision should be reversed or remanded because he failed to consider the observations of Reed's "non-physician medical professionals."  (ECF No. 18, PageID.13267).  Reed does not expound upon this argument.  However, because the Commissioner addressed this argument in his motion for summary judgment (ECF No. 17, PageID.1312), the court will generally address the argument.

The ALJ did not err by declining to give controlling weight or even great weight to the opinion of Reed's chiropractor.  Reed's chiropractor did issue "Disability Certificates," which provided that Reed was unable to work for various short-term periods.  (Tr. 18, 332, 1000-1001).  But, the Commissioner correctly points out that a chiropractor is not an acceptable medical source under the regulations.  20 C.F.R. § 404.1502(a) (providing that an acceptable medical source means a licensed physician, licensed psychologist, licensed optometrist, licensed podiatrist, qualified speech-language pathologist, licensed audiologist, licensed advanced practice registered nurse, or licensed physician assistant); *see also* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (providing that information from a chiropractor, which is defined as an "other source," cannot establish the existence of a medically determinable impairment).  For this reason, the ALJ was required to consider the chiropractor's opinion and treatment notes along with all of the other evidence in the record, but he was not obligated to give the evidence any particular weight.  SSR 16-3p; *see Cole v. Astrue*, 661 F.3d 991, 939 (6th Cir. 2001) (Recognizing that the ALJ was required to consider the opinions of plaintiff's "other source" mental health therapist in view of the therapist's expertise and longstanding treatment relationship with plaintiff).  The record demonstrates that he did consider this other source.  Indeed, the ALJ discussed both Reed's physical therapy treatment and chiropractic treatment with

John Mufarreh, D.C. in his decision. (Tr. 16, 18). He also correctly observed that Dr. Mufarreh is not an acceptable medical source and as such his opinions are not entitled to controlling or even great weight. Thus, Reed's contention that the ALJ did not consider his treatment with these other sources is not borne out in the record. Besides, as to Dr. Mufarreh's opinion that Reed was unable to work, an opinion on the ultimate issue of disability is an administrative determination reserved for the Commissioner, not some other source. *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) ("Subsection [(d)(1)] further elaborates that no 'special significance' will be given to the opinions of disability, even if they come from a treating physician."); *see also* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled."). Consequently, Reed is not entitled to reversal or remand on this basis.

     F.    <u>Other Issues Raised in Reply</u>

For the first time in reply, Reed also argues that the ALJ erred because he failed to discuss the "serious side effects" of his medications. (ECF No. 18, PageID.1326). He also alludes to, but does not expressly make, an argument that

the ALJ failed to develop the record.  Neither of these arguments is developed in any meaningful fashion for the court's review.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997).  Further, since Reed failed to raise these issues in his opening brief, the Commissioner never had an opportunity to address the arguments.  The court finds that Reed has also waived the arguments for this reason and thus declines to address them.  *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs . . . do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.  Further the non-moving party ordinarily has no right to respond to the reply brief. . . . As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived.") (quoting *Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)).

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** plaintiff's motion for summary judgment, **DENIES** defendant's motion for summary judgment, and

**REVERSES** the findings of the Commissioner and **REMANDS** for further

proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

      **IT IS SO ORDERED**.

Date: May 31, 2020                  s/Stephanie Dawkins Davis
                                                Stephanie Dawkins Davis
                                                United States District Judge